James Avery RUSH, IV Plaintiff,

v.

**NATIONAL BOARD OF MEDICAL EXAMINERS, Defendant.**

No. CIV.A.2:03–CV–140–J.

United States District Court,
N.D. Texas,
Amarillo Division.

June 20, 2003.

Brad Alan Chapman, Mullin Hoard & Brown, Amarillo, TX, F John Mozola, Mullin Hoard & Brown, Amarillo, TX, for Plainitff.

Thomas C Riney, Gibson Ochsner & Adkins, Amarillo, TX, for Defendant.

## OPINION AND ORDER

MARY LOU ROBINSON, District Judge.

Plaintiff James Avery Rush, IV seeks a preliminary injunction requiring the National Board of Medical Examiners to allow him additional time to take the U.S. Medical Licensing Examination, Step I. Plaintiff claims that he is entitled to this reasonable accommodation in taking the Step I examination because he is an individual with a disability as defined by the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.* Specifically, Plaintiff alleges that he has a disability that substantially limits his major life activities of reading and learning. Plaintiff claims the Defendant has discriminated against him under the ADA by refusing to provide him with his requested reasonable accommodation of twice or double the usual time in which to take the examination. The examination is scheduled for July 2, 2003.

On June 16 and 17, 2003, the Court conducted an evidentiary hearing on Plaintiff's request for a preliminary injunction. After consideration of the motion and the responses thereto, and the evidence and arguments offered at the two-day hearing, and the post-hearing submissions of the parties, the Court grants the preliminary injunction and makes the following findings of fact and conclusions of law.

### Plaintiff

Plaintiff James Avery "Jave" Rush, IV has a disability, that is, a physical or mental impairment that substantially limits one or more of his major life activities of reading and learning. More specifically, Plaintiff's reading and visual processing skills are below average such that his ability to read and process written information is substantially limited and is below average in comparison to most people as well as persons of his age and educational level. Without accommodation this impairment, rather than other factors such as education or innate ability, substantially limits his ability to read, mentally process and comprehend written words, learn, and take time-limited tests.

Plaintiff, a second year medical student at Texas Tech University School of Medicine, experiences substantial difficulty completing testing tasks within prescribed time limits because of an inability to process written information as quickly as the majority of his peers. This inability to process information efficiently results in significantly reduced test scores on timed exams. Such reduced scores impair his chances of completing his medical education successfully.

Plaintiff is highly motivated. Before his admittance to medical school, he earned a MS in Math with honors from the University of Oklahoma and an MBA in medical services from Texas Tech University. Plaintiff has a history of formal and informal accommodations related to test taking at the middle school, high school, college, and graduate school levels. During high

school he was given extra time to take some examinations, an informal accommodation granted for example to English AP students who wished to stay late after school to finish exams or in-class writing assignments. Math exams in college were not timed; students were allowed to take as much time as they needed to complete math exams. Examinations in his MBA program were designed to be successfully completed within one hour, but students were permitted to take up to three hours to complete an exam. Typically Plaintiff was the last student to complete his examinations.

After two attempts resulted in low scores, Plaintiff asked for and received a formal time accommodation (double time) on his third MCAT exam, a test required for admission into U.S. medical school. With this formal time accommodation Plaintiff was able for the first time to score high enough on the MCAT to be accepted into a U.S. medical school. Plaintiff asked for and received formal accommodations from medical school officials, consisting of a time accommodation on exams during his medical school education.

At the end of his second year of medical school, Plaintiff requested from the Defendant and was refused a formal time accommodation (double time) to take Step I of the U.S. Medical Licensing Examination. Passage of the Step I exam is required for continuation of a medical school career and for admission into post-second year medical school programs, such as medical residency training and/or medical speciality programs. This suit was filed to achieve that time accommodation from the Defendant.

## USMLE Step I

Defendant National Board of Medical Examiners (Board) is a non-profit organization chartered in 1915 to design national standards for medical licensing examinations. The Board has developed a medical licensing examination consisting of three separate parts, Steps I, II and III, which is now accepted by all fifty states. At issue in this case at this time is accommodation for the Step I exam.

The United States Medical Licensing Examination, Step I (USMLE Step I), is a timed multiple-choice examination designed to test a person's mastery of the basic science underlying medicine and one's ability to utilize that knowledge. The Step I examination is not graded on a curve; it is a mastery test. Because it is a mastery test, in theory 100% of the persons taking the Step I examination could pass, or fail, each time the test is offered. With a mastery test, the test taker either knows the material and passes the exam, or he does not know the tested-for material and fails the exam. Time constraints for most individuals who take this test are not of major consequence because the majority of medical students possess the reading and processing efficiency needed to work through the test and the set of possible answers within the time constraints that are allowed. This is not true however for individuals with reading disabilities.

The Board has contracted with Prometrics, a national network of computer testing centers, to administer the USMLE Step I exam. As administered, the Step I exam consists of one eight-hour day, broken into seven one-hour blocks or segments plus a one-hour break. During each 60 minute block the examinee is required to read and answer 50 written questions. A typical question requires a person with at least average medical education, knowledge and training about 45 seconds to read with understanding plus additional time to either ascertain the correct answer or to determine that he does not know the correct answer. The ability to rapidly read

the English language, efficiently mentally process the medical test questions and the set of possible answers, and rapidly comprehend or understand the written test materials is essential to displaying one's mastery of the subjects tested by the examination.

The score a medical student achieves on the Step I examination is a major factor in determining into which medical speciality or third year training program a student will be accepted. For example, a top USMLE score is required for receiving an interview with and admission into the most prestigious and competitive medical speciality and medical student residency training programs. Students who do not display mastery by passing the Step I exam at the normal point in their medical school career, usually before the beginning of their third year, suffer a disadvantage in comparison to future residency and medical training options afforded other medical school students. Specifically, if a student does not pass the Step I exam before the beginning of his third year of medical school, he would normally need to drop out of school during his third year in order to study properly for the exam, thereby falling behind his peers. Students behind in their studies normally will not be offered the range and quality of residency or medical speciality options their peers will be offered. They will normally not be offered interviews for further study in the more competitive medical specialities, will not have the usual range of geographic or location (city and school) choices for remaining medical school programs which may be available, and will be delayed in completion of their medical training. There is no good way to remedy this injury. Timely Step I testing and passage is required.

A passing or superior score on the Step I exam does not mean that the medical student will get accepted to one of the more desirable medical school programs to which he applies. A superior score means that the student would more likely receive an admission interview for acceptance into such a program, which might or might not lead to admission into the more prestigious or competitive medical speciality programs.

The fact that a medical student received an ADA accommodation for his Step I examination, such as extra time to complete the exam, is noted on USMLE Step I test results by the statement that the test as taken was a non-standard or accommodated exam. This notation alerts those administering the admissions processes for medical school programs that the Step I exam was taken and/or scored under non-standard conditions. During the admissions process the admissions personnel may inquire of the student or the Board about the fact that a non-standard exam had been taken by a medical student.

### Woodcock Johnson III

Before granting a time accommodation on the USMLE, the Board of Medical Examiners requires a learning disorder diagnosis and a current (less than three years old) assessment of an applicant's leading disability. The Woodcock–Johnson III (WJ III) battery of tests is accepted by the Board for this assessment and a DSM–IV 315.00 diagnosis is what is required. The Board therefore informed Plaintiff that it required a current assessment report as well as a current diagnosis of a learning disability before it would grant his request for a time accommodation on the Step I examination.

Pursuant to the Board's requirements, in May of 2003 Plaintiff was given the WJ III battery of tests by Dr. David R. Egerton of the Psychiatry Department at the Texas Tech School of Medicine. This test's results show that Plaintiff has low

reading efficiency caused by a very low or very weak reading processing and decision speed. Processing speed is the ability to perform automatic cognitive tasks, particularly when measured under time pressure to maintain focused attention. Decision speed is an aspect of cognitive efficiency and provides an index of a person's ability to make correct conceptual decisions quickly.

Decreasing the time needed to take a mastery test such as the USMLE by, for example, refusing a time accommodation for a person such as Plaintiff, is tantamount to increasing the difficulty of that test. By forcing an individual with a reading disability to adhere to prescribed time limits that do not allow him adequate time to process test information in effect makes the testing situation more difficult for him than for his peers. Another result of a lack of accommodation is that the exam does not test the person's mastery of the subject but instead tests the level of disability. Accommodating the needs of an individual with such a disability is a means of equalizing test demands and ensuring that he has a fair chance to display his mastery, or lack thereof, of the required medical materials.

Following the testing and clinical assessment of Plaintiff, Dr. Egerton made a DSM–IV clinical diagnosis of a reading disorder, that is, that Plaintiff is substantially limited in his ability to read and comprehend. It is undisputed that such a diagnosis means that such an individual requires extra time to read and compre-hend written examinations and that an appropriate accommodation for a person with this reading disorder is to afford him extra time on written examinations requiring reading. No expert testifying at trial other than Dr. Egerton clinically examined or assessed Plaintiff for a learning disability.[1] The Court finds Dr. Egerton's report and diagnosis credible.

Any finding of fact constituting in whole or in part a conclusion of law will be deemed a conclusion of law. Any conclusion of law constituting in whole or in part a finding of fact will be deemed a finding of fact.

## Discussion and Analysis

■ A preliminary injunction is an extraordinary equitable remedy that may be granted only if a plaintiff establishes the following four elements:

(1) a substantial likelihood of success on the merits;

(2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is denied;

(3) that the threatened injury outweighs any damage that the injunction might cause defendants; and

■ (4) that the injunction will not disserve the public interest. *Sugar Busters LLC v. Brennan,* 177 F.3d 258, 265 (5th Cir.1999). The decision to grant a preliminary injunction is to be treated as the exception rather than the rule. *State of Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5th Cir.1975). Plaintiffs must carry

---

**1.** At the hearing Defendant offered the testimony of Dawn Flanagan, Ph.D. for the evaluation of Plaintiff's disability. Dr. Flanagan is a professor of psychology but is not a clinical psychologist and had no personal contact with Plaintiff. Defendant also offered the affidavits of Joseph Bernier, Ph.D. and Samuel Ortiz, Ph.D. The Court conditionally admitted the affidavits subject to briefing on the ques-tion of their admissibility. Although those affiants were not subject to cross-examination and Plaintiff's attorneys were not afforded by defense counsel an opportunity to depose or question either affiant in advance of the hearing, the Court has nevertheless considered those affidavits because this is a mandatory preliminary injunction hearing.

the burden of proving all four factors. *Black Fire Fighters Ass'n v. City of Dallas, Tex.*, 905 F.2d 63, 65 (5th Cir.1990).

■ Mandatory preliminary relief which goes well beyond simply maintaining the status quo *pendente lite* is particularly disfavored and should not be issued unless the facts and law clearly favor the moving party. *Exhibitors Poster Exch., Inc. v. National Screen Serv. Corp.*, 441 F.2d 560, 561–62 (5th Cir.1971)(*per curiam*); *Miami Beach Federal Savings & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir. 1958). An indispensable prerequisite to issuance of a preliminary injunction is prevention of irreparable injury. *Van Arsdel v. Texas A & M University*, 628 F.2d 344, 346 (5th Cir.1980); *Harris v. Wilters*, 596 F.2d 678, 680 (5th Cir.1979); *Henry v. First National Bank of Clarksdale*, 595 F.2d 291, 302 (5th Cir.1979), *cert. denied sub nom.*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir.1976). "Only in rare instances is the issuance of a mandatory preliminary injunction proper." *Harris v. Wilters*, 596 F.2d at 680.

■ Title II of the ADA prohibits discrimination by public entities, such as the National Board of Medical Examiners, on the basis of disability. 42 U.S.C. § 12132. Title III of the ADA requires, *inter alia*, entities offering licensing examinations to provide reasonable accommodations to disabled individuals. 42 U.S.C. § 12189. *See also* 29 C.F.R. § 1630.2(j)(3)(i) (extra time accommodations on timed examinations).

In order to find that Plaintiff has a reading disability, he must be substantially limited in reading in comparison to "most people." 28 C.F.R. Pt. 35, App. A § 35.104.

"[A]n impairment is substantially limiting if it significantly restricts the duration, manner or condition under which an individual can perform a particular major life activity as compared to the average person in the general population's ability to perform that same major life activity ...."

29 C.F.R. Pt. 1630, App. A § 1630.2(j).

■ On the totality of evidence, including Plaintiff's current Woodcock–Johnson III test scores (required by the Defendant to document Plaintiff's diagnosis and disability) and his 1998 Wechsler Adult Intelligence Scale–III scores, Plaintiff has shown that he is an individual with a disability under the ADA because he is substantially limited in the major life activities of reading and learning when compared to most people.

■ The USMLE Step I examination involves and requires extensive reading, and scoring well and/or passage of the exam requires extensive subject-matter knowledge. Plaintiff has shown a sufficient causal connection between his reading impairment and his failures to score well, or as well as he might, on time-limited examinations requiring extensive reading. Plaintiff has shown that if he is accommodated will he be effectively tested not on his disability but rather on his subject-matter knowledge. Plaintiff has shown that his reading impairment seriously decreases the rate at which he reads with comprehension. Plaintiff will suffer irreparable injury if the requested injunction is denied.

With the requested reasonable accommodation of double time to take the Step I exam, Plaintiff will have time to either display his mastery of the subject matter, or show that he has not sufficiently mastered the tested materials. In either event, granting the injunction will allow Plaintiff to be tested on his medical and science knowledge and not his disability.

The threatened injury to Plaintiff outweighs any damage that granting the preliminary injunction might cause at this time to the Defendant or to the public.

The injunction will not disserve the public interest but will further the public interest in prohibiting discrimination by public entities, such as the National Board of Medical Examiners, on the basis of disability by fulfilling the ADA's requirement that entities offering licensing examinations provide reasonable accommodations to disabled individuals.

### Order

Defendant National Board of Medical Examiners is ordered to allow Plaintiff James Avery "Jave" Rush, IV double or twice the normal amount of time to take and complete the U.S. Medical Licensing Examination, Step I, on or about July 2, 2003. Since the examination cannot be completed in one day, Plaintiff is to be allowed to complete the examination over two days.

This preliminary injunction is binding upon the Defendant National Board of Medical Examiners, its officers, agents, servants, employees, and attorneys, and upon those persons administering the Step I examination who are under contract with the Board or in active concert or participation with them who receive actual notice of this Order by personal service or otherwise.

It is SO ORDERED.

## PRELIMINARY INJUNCTION ORDER

The National Board of Medical Examiners is hereby ORDERED to allow Plaintiff James Avery "Jave" Rush, IV double or twice the normal amount of time to take and complete the U.S. Medical Licensing Examination, Step I, on or about July 2, 2003. Since the examination cannot be completed in one day, Plaintiff is to be allowed to complete the examination over two days.

This preliminary injunction is binding upon the National Board of Medical Examiners, its officers, agents, servants, employees, and attorneys, and upon those persons administering the Step I examination who are under contract with the Board or in active concert or participation with them who receive actual notice of this Order by personal service or otherwise.

It is SO ORDERED.